# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:13-CV-00040-FDW-DSC

| | |
|---|---|
| TREE.COM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| LAUREATE ONLINE EDUCATION BV ) | |
| & LAUREATE EDUCATION, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court upon Defendant Laureate Online Education BV's ("Laureate BV's") and Defendant Laureate Education, Inc.'s ("Laureate, Inc.'s") (collectively "Defendants'") "Motion To Dismiss Or, In The Alternative, To Stay." (Doc No. 7). For the reasons that follow, Defendants' Motion seeking dismissal pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure is DENIED.[1]

Laureate, Inc. is a Maryland company that supports a global network of campus-based and online higher learning institutions, none of which are in North Carolina. Laureate BV is a Dutch affiliate of Laureate, Inc. that maintains online programs for several universities. Plaintiff Tree.Com, Inc., a Delaware company with headquarters in North Carolina, maintains DegreeTree.com, a website that allows prospective students to compare higher learning institutions. Tree sells data (or "leads") regarding prospective students to educational institutions such as Laureate, Inc..

Plaintiff alleges that in early 2011, Plaintiff and Defendants entered into an agreement

---

[1] Defendants' Motion also originally requested dismissal under Fed. R. Civ. P. 12(b)(5) or, alternately, to stay the pending case. These portions of the motion have since been withdrawn. (Doc No. 10).

whereby Plaintiff would sell particular leads to Defendants for three universities. Defendants agreed to Plaintiff's Standard Terms and Conditions which included a forum selection clause for state and federal courts in North Carolina. This agreement was signed by Hannes Willems, Laureate BV's media buyer for Walden University, who wrote "Laureate Online Education, BV" above his signature line. Pursuant to these terms, Defendants would submit an insertion order ("IO") to Plaintiff which requested a delivery of leads, supplied a fee to be paid per lead, relayed lead posting instructions, and conveyed the criteria required for payment. The Standard Terms and Conditions of the IO's also contained a 1.5% interest charge or the maximum rate allowed by law for all overdue balances from the due date until the date payment was received. If a particular lead did not conform to the criteria supplied in Defendants' posting instructions, email, or other communications, Defendants were not responsible for paying for that individual lead.

Plaintiff alleges that from April 2011 through February 2012, the parties performed the lead reconciliation at the end of each month and reached mutual agreements as to the proper adjustments to Plaintiff's initial invoices. However, in March 2012, Defendants stopped participating in the month-end lead reconciliation and began underpaying Plaintiff's invoices without providing data or justification. Plaintiff asserts that Defendants began using a "Lead Scoring Model" in violation of Plaintiff's Standard Terms and Conditions. Plaintiff attempted to reconcile with Defendants with no success. Per Laureate BV's request, Plaintiff sent employees to Laureate BV's headquarters in Amsterdam, the Netherlands. However, Defendants refused to address the underpayments. Plaintiff's Chief Financial Officer sent multiple communications to Defendants' executives requesting their cooperation in resolving the dispute but failed to receive any substantive response.[2] Plaintiff alleges that, as a result of the underpayments, Plaintiff has

---

[2] Plaintiff's Chief Financial Officer is not named in the record.

delivered thousands of valid, conforming leads to Defendants, for which it has not been properly compensated.

On December 20, 2012, Plaintiff filed suit in the Superior Court of Mecklenberg County, North Carolina. This case was removed to this Court by Defendants on January 22, 2013. Defendants have not answered the Complaint, but instead now seek dismissal pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil procedure.

With respect to the first two portions of Defendants' Motion, Defendants argue this case should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure because this Court lacks personal jurisdiction over either of them, and that this case should be dismissed under Rule 12(b)(3) on the grounds that venue is not appropriate in Charlotte, North Carolina. With respect to these issues, the Court first analyzes the forum selection clause in this case, which places jurisdiction and venue in Charlotte, North Carolina. Contracts which contain "forum selection clauses" have generally been held enforceable. The Supreme Court has held that forum selection provisions are "prima facie valid" and should be enforced absent a "clear[] show[ing] that enforcement would be unreasonable or unjust, or that the clause [i]s invalid for such reasons as fraud or overreaching," or "if enforcement would contravene a strong public policy of the forum in which suit is brought." M/S Bremen v. Zapata Off-Shore, Co., 407 U.S. 1, 10, 15 (1972). Also, in reference to "a forum-selection clause in a form contract between a cruise line and individual customers," the Supreme Court held that such a clause is required to "pass 'judicial scrutiny for fundamental fairness.'" Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 437 (W.D.N.C. 2008) (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)).

Defendants contend Plaintiff's Terms and Conditions as signed by Willems are not enforceable. Defendants assert because Willems lacked the authority to bind Defendants, and additionally had no relationship with Laureate, Inc., but only Laureate BV, the forum selection clause is therefore unenforceable. While it appears to the Court that Willems' signature does in fact bind both Defendants to the contract, based upon Defendants' actions after the contract was signed, the Court finds that both Defendants are bound. Moreover, on various grounds, courts have refused to disregard a forum selection clause based on whether the signatory was authorized to sign. See The Hippage Co. v. Access2Go, Inc., 589 F. Supp. 2d 602, 612 (E.D. Va. 2008), Gen. Elec. Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1098 (6th Cir. 1994). Accordingly, given that the Court treats the contract as binding, this Court takes the next step in its analysis, which is set forth by United States District Court for the Eastern District of Virginia as follows:

> [t]his Court's task in determining the enforceability and applicability of the forum selection clause at issue is threefold. First, it must establish whether the clause is mandatory. If so, the clause is presumptively enforceable. Second, the Court must establish whether the clause is presumptively enforceable against the particular claims in dispute, i.e. whether the claims fall within the scope of the clause. If it finds that they do fall within the clause's scope, then that clause presumptively applies to bar their adjudication outside its designated forum. Third and finally, the Court must decide whether the party opposing the clause's enforcement has rebutted the presumption of enforceability, by proving that enforcement would be unreasonable. If it has not, the clause will be enforced.

Torres v. SOH Distribution Co., Inc., 3:10CV179, 2010 WL 1959248 at *2 (E.D.Va. May 13, 2010) (citations omitted).

The Court first addresses whether the forum selection clause is mandatory. "[F]orum selection clause[s] can be either mandatory . . . providing the designated forum with exclusive jurisdiction over any disputes . . . or permissive, providing the designated forum with jurisdiction over the parties, but not necessarily exclusive jurisdiction." Gita Sports Ltd. v. SG

Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008) (citing Scotland Memorial Hosp., Inc. v. Integrated Informatics, Inc., No. 1:02-cv-796, 2003 WL 151852, at *3-4 (M.D.N.C. Jan. 8, 2003)). "As a general rule, a forum selection clause 'will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive.'" Gita, 560 F. Supp. 2d at 436 (quoting Scotland, 2003 WL 151852 at 4). "A crucial distinction between a mandatory clause and a permissive clause 'is whether the clause only mentions jurisdiction or specifically refers to venue.'" Id. (quoting Scotland, 2003 WL 151852 at 4).

> In this case, Plaintiff's Standard Terms and Conditions specify a mandatory provision:
>
> The parties agree that this Agreement shall be governed by and constructed in accordance with the laws of the State of North Carolina without regard to any conflict of law provisions. Should a dispute arise *under or in relation* to this Agreement, jurisdiction over and venue of *any* suit arising out of this Agreement shall be *exclusively* in the state and federal courts of Charlotte, North Carolina unless waived by Tree.

(Doc. 7-5 ¶ 12.4) (emphasis added). This clause uses the terms "any" and "exclusively" and the language is unequivocally mandatory. Accordingly, the language of the forum selection clause binds Defendants to the choice of law and choice of jurisdiction and venue in the state and federal courts of Charlotte, North Carolina. In addition, the plain language of the clause puts any dispute arising under the Agreement under its provisions.

With respect to reasonableness, "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen, 407 U.S. at 10. The United States Court of Appeals for the Fourth Circuit summarized the test for "reasonableness" as follows:

> Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave

5

inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing Carnival Cruise Lines, 499 U.S. at 595; M/S Bremen, 407 U.S. at 12-13, 15, 18).[3] The Western District of North Carolina and other courts have held that federal law governs enforcement of forum selection clauses. Gita, 560 F. Supp. 2d at 438, Hippage, 589 F. Supp. 2d at 611, n.8.

There are insufficient allegations in this case that the forum selection clause was the result of fraud or overreaching. Defendants contend the IOs contained all necessary information to govern the relationship and that Plaintiff's Terms and Conditions did not apply to the subsequent monthly individual IOs after the dispute arose. This Court disagrees, finding the IOs did not contain separate clauses or provisions. The Terms and Condition's forum selection clause and modification section explicitly state, "Should a dispute arise *under or in relation to* this Agreement . . . This Agreement *may not be modified* . . . ." (Doc 7-5 ¶¶ 12.4, 12.6) (emphasis added). Accordingly, the forum selection clause is not the result of fraud or overreaching by Plaintiff.

Furthermore, the parties will not face grave inconvenience resulting from venue in the Western District of North Carolina even though one party is in the Netherlands. Generally, "courts are in agreement that the expense of litigation is insufficient to invalidate a forum selection clause, especially in a diversity case." Gita, 560 F. Supp. 2d at 439; see Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1258 (4th Cir. 1991) ("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses

---

[3] In Gita, this Court noted that "[b]ecause *Bremen* dealt with federal question jurisdiction, there was some confusion as to whether the same analysis would apply in a case involving diversity of citizenship. The Supreme Court answered this question affirmatively in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)." 560 F. Supp. 2d at 437 (italics in original).

from far away."); Paper Exp., Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 758 (7th Cir. 1992) (citations omitted) ("[Plaintiff] argues that the forum selection clause is unreasonable and unenforceable because as a practical matter it would be inconvenient and costly to litigate in Germany . . . . [A]dditional expense does not necessarily invalidate a forum selection clause since [plaintiff] was presumably compensated for this burden by way of the consideration it received under the contract."). Here Defendants are not faced with grave inconvenience and, therefore, the forum selection clause is not invalidated. In addition, the Court finds that there is no fundamental unfairness in enforcing the forum selection clause.

Finally, with respect to North Carolina public policy, this Court has previously noted that "North Carolina has a well recognized and strong public policy against forum selection clauses." Gita, 560 F. Supp. 2d at 440. Section 22B-3 of the North Carolina General Statutes provides that "any provision in a contract entered into in North Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." However, while North Carolina public policy may indicate that the forum clause should not stand, "[t]he factors do not represent an elemental test, which the satisfaction of each element being a necessary condition. Rather, the factors are just that: factors meant to inform the Court as to the clause's reasonableness." Gita, 560 F. Supp. 2d at 440. Accordingly, North Carolina policy does not serve to veto the other factors that point in favor of the forum selection clause in this case not being fundamentally unfair.

Having determined that there was no fraud or overreaching in this case, Defendants will not be gravely inconvenienced or denied their day in court, enforcing this forum clause would not be fundamentally unfair. Additionally, because North Carolina is outweighed by the other factors at issue, this Court holds that the forum selection clause is proper. Accordingly, based on

7

the forum selection clause, jurisdiction and venue are appropriately in this Court and within the Western District of North Carolina. The Court need not proceed any further in its analysis on these issues. As such, the Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(3) is DENIED.

Finally, Defendants contend that Plaintiff's claim under quantum meruit should be dismissed pursuant to Rule 12(b)(6) because it relates to amounts that Plaintiff claims to be owed under an express contract. Defendants contend that a claim for unjust enrichment may not be brought in the face of an express contractual relationship between the parties. However, Rule 8(d) of the Federal Rules of Civil Procedure provides that parties may make both alternate and inconsistent claims. Defendant argues that Plaintiffs claims are not pled in the alternative to each other. Plaintiff argues that it meant to plead these claims as alternative claims and states that it will move to amend the Compliant if necessary. For the sake of efficiency, the Court deems quantum meruit to be an alternative theory of Plaintiff moving forward, and Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is DENIED.

For the above reasons, Defendants' Motion to Dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil procedure is DENIED. This case will remain before this Court, and Defendants are hereby ORDERED to submit their Answer to Plaintiff's Complaint within ten (10) days of the issuance of this Order.

IT IS SO ORDERED.

Signed: August 13, 2013

Frank D. Whitney
Chief United States District Judge